# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  12-cv-3028

_____

VIDEOCONFERENCE DEPOSITION OF:  JOHN ULZHEIMER
                                May 26, 2021
_____

MARK D. REMALY,

Plaintiff,

v.

WYNDHAM RESORT DEVELOPMENT CORP.,

Defendant.
_____

      PURSUANT TO NOTICE, the videoconference deposition of JOHN ULZHEIMER was taken on behalf of the Plaintiff, with all parties appearing remotely, on May 26, 2021, at 9:00 a.m., before Kimberly Smith, Registered Professional Reporter and Notary Public within Colorado.

1    Q.   And in order to figure out what a
2    repossession is, we have to just use common knowledge
3    of what a repossession is, correct?
4         MS. LAWSON:  Object to form.
5    A.   No, not in credit reporting.  In credit
6    reporting, it's up to the furnisher to determine and
7    define a term that has no definition in the manual.
8         So it would be up to the furnisher to
9    define what they believe is a repossession and then
10   report it accordingly, per the manual's fields and
11   coding layout.
12   Q.   (BY MR. VEDRA)  So a furnisher can decide
13   what a repossession is?
14   A.   Correct.
15   Q.   A furnisher could decide that if it --
16   A.   Well, let me -- I'm sorry.  I'm going to --
17   I'm going to change my answer.  So there are
18   furnishers that cannot -- there are furnishers that
19   cannot define that because they're not technically --
20   like a collection agency is a furnisher, but they
21   would never report a repossession.
22        So it would have to be a lender furnisher;
23   so as long as I can throw in lender furnisher rather
24   than just furnisher, just to, you know, be hyper
25   accurate about the answer.

1   then they have to understand what it is about the item
2   the consumer -- with which the consumer disagrees or
3   about which the consumer disagrees.
4        Q.   Now, a furnisher may also have additional
5   information about an account that the consumer doesn't
6   necessarily have when making a dispute, right?
7        A.   I think that's probably accurate almost
8   universally.
9        Q.   And if it's relevant to the dispute, the
10  furnisher should consider that information when
11  investigating a credit dispute?
12       A.   I think if they have access to it, then
13  that makes sense.
14       Q.   And you agree that the furnisher must
15  consider the facts and circumstances of the dispute to
16  conduct a reasonable investigation?
17       A.   Well, I can't say "must."  I -- I mean, I'm
18  getting dreadfully close to giving you a legal
19  opinion, and I can't do that.
20            But I wouldn't disagree that that's -- that
21  that's a good housekeeping part of the process:  to
22  review -- to review, you know, all the documentation
23  that's relevant to the dispute.
24       Q.   You agree that to conduct a reasonable
25  investigation, the furnisher should review their

 1   internal system of record and access multiple other
 2   internal and external systems containing account and
 3   consumer-related information, right?
 4       A.   Now, I don't know -- again, you're asking
 5   me to give you a legal opinion.  That is a common way
 6   that furnishers perform investigations.  I don't know
 7   if they, quote, unquote, must do that.
 8       Q.   But that's something that you've written in
 9   your expert report; isn't it?
10       A.   Yeah.  Let me read it to you, because it
11   doesn't say "must."  Do you really want me to read it
12   to you, or can we agree it doesn't say "must"?
13       Q.   Well, I'll do the reading, and I'll ask you
14   a question.
15       A.   Okay.  It's on page 13.
16       Q.   On page 13, you state, Most furnishers of
17   information will review the dispute forms submitted by
18   the credit bureaus, review their internal system of
19   record, access multiple other internal and external
20   systems containing account and consumer-related
21   information, and will also have access to review any
22   attachments to the dispute which the consumer may have
23   included with their communication to the credit
24   bureaus.
25           Did I read that correctly?

1      Q.   Under the heading C, Opinion No. 2, you
2  state, "Wyndham's initial account furnishing and
3  subsequent dispute responses were reasonably adapted
4  to comply with the Fair Credit Reporting Act."
5           Did I read that correctly?
6      A.   You did, yes.
7      Q.   But you're not offering an opinion that
8  what Wyndham did was reasonable to investigate
9  Plaintiff's credit disputes?
10     A.   Correct.  I can't do that.
11     Q.   And you are, however, offering the opinion,
12 though, that most furnishers of credit information
13 will do the following things to investigate a
14 dispute --
15     A.   On page 13.  That's right.
16     Q.   -- most furnishers will review the dispute
17 form submitted by the credit bureaus.  And that's the
18 ACDV, correct?
19     A.   That's correct, yes, sir.
20     Q.   And most furnishers will review their
21 internal system of record; is that correct?
22     A.   Correct.
23     Q.   And that's their master file system that
24 has account data in it?
25     A.   Or their note system, what they call their

1    core system.  That's right.
2         Q.   And most furnishers will access multiple
3    other internal and external systems containing account
4    and consumer-related information?
5         A.   To the extent that's relevant, but yes.
6         Q.   And most furnishers will also review any
7    attachments to the dispute that the consumer may have
8    included with their communication to the credit
9    bureau, correct?
10        A.   Agreed.  That's right.
11        Q.   And it's your opinion that that's what
12   constitutes a reasonable investigation?
13        A.   There is no definition of reasonable
14   investigation, so I don't have a definition of what is
15   a reasonable investigation.
16        Q.   Do you believe that what is reasonable, as
17   far as an investigation goes, is what's reasonable
18   under the circumstances?
19        A.   I'm not sure I'm fully in agreement with
20   that.  I don't necessarily disagree.  Generally
21   speaking, if -- you know, I think -- I think
22   getting -- either causing accurate or allowing
23   accurate information to remain on a credit report is
24   really the goal.
25             However we get to that goal, I think

1   impression that that's all the opinion is, then that's
2   not correct.
3           So there's also this issue of being in
4   dispute.  So to the extent you don't have any
5   questions about that, then fine.  But I just don't
6   want you to not see that that's in there as well.
7       Q.   No.  I see that that's in there.
8       A.   Okay.
9       Q.   And your opinion on that is clear.
10      A.   Okay.
11      Q.   The CDIA has directed data furnishers not
12  to report disputed debts as disputed; is that right?
13      A.   The CDIA has instructed the furnishers to
14  not include compliance condition codes indicating in
15  dispute in response to credit bureau-sourced disputes
16  or ACDVs, that's right.
17      Q.   But moving on to your second opinion --
18      A.   Okay.
19      Q.   -- you do not intend to offer the opinion
20  that Wyndham conducted a reasonable investigation of
21  Mr. Remaly's credit disputes?
22      A.   That is 100 percent correct.  I cannot
23  give -- unless the judge allows me to give opinions on
24  that, then I don't have any plans on trying to stick
25  that in as an opinion; because it's -- I believe

John Ulzheimer
May 26, 2021

```
 1                REPORTER'S CERTIFICATE

 2   STATE OF COLORADO        )
                              ) ss.
 3   CITY AND COUNTY OF DENVER )

 4           I, KIMBERLY SMITH, Registered Professional
     Reporter and Notary Public ID 20054024603, State of
 5   Colorado, do hereby certify that previous to the
     commencement of the examination, the said JOHN
 6   ULZHEIMER was duly sworn or affirmed by me to testify
     to the truth in relation to the matters in controversy
 7   between the parties hereto; that the said deposition
     was taken in machine shorthand by me at the time and
 8   place aforesaid and was thereafter reduced to
     typewritten form; that the foregoing is a true
 9   transcript of the questions asked, testimony given,
     and proceedings had.
10
             I further certify that I am not employed by,
11   related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of
12   this litigation.

13           IN WITNESS WHEREOF, I have affixed my
     signature this 14th day of June, 2021.
14           My commission expires June 21, 2025.

15
     _XX__ Reading and Signing was requested.
16
     _____ Reading and Signing was waived.
17
     _____ Reading and Signing is not required.
18

19

20

21                            _____
22                            Kimberly Smith
                              Registered Professional Reporter
23

24

25
```