IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No.   20-cv-3028-LTB-NYW

MARK D. REMALY,

        Plaintiff,
v.

WYNDHAM RESORT DEVELOPMENT CORPORATION d/b/a WORLDMARK BY WYNDHAM,

        Defendant.

## ORDER

This matter is before me on a Motion for Summary Judgment filed by Defendant Wyndham Resort Development Corporation, d/b/a Worldmark by Wyndham ("Wyndham"). [**Doc #62**] Plaintiff Mark D. Remaly has filed a response to Wyndham's motion [Doc #78] opposing the relief requested, and Wyndham has filed a reply. [Doc #81] Oral argument would not materially assist me in my determination of this motion. After consideration of the parties' briefs, and for the reasons stated, I GRANT IN PART AND DENY IN PART Wyndham's Motion for Summary Judgment.

### I.   BACKGROUND

Based on the briefing, the evidence submitted and the Final Pretrial Order entered in this case [Doc #86], the parties agree on the facts as follows, unless otherwise noted. On October 12, 2017, Plaintiff purchased a timeshare ownership from Wyndham. Plaintiff paid Wyndham for the timeshare by charging approximately $9,000.00 on his Citibank credit card and approximately $15,000.00 through PayPal. The first contract Plaintiff executed to purchase the timeshare

ownership (the "Original Contract") had omitted 10,000 bonus matching credits that Wyndham had offered him at the time of purchase. To remedy his complaint, Wyndham and Plaintiff agreed that Plaintiff would execute a rewritten timeshare ownership contract. On February 2, 2018, Plaintiff executed a rewritten contract (the "Rewritten Contract"). Upon Plaintiff's execution of the Rewritten Contract, the money Plaintiff paid pursuant to the Original Contract was transferred to the Rewritten Contract. On February 14, 2018, Wyndham sent Plaintiff a letter informing him of the rescission of the Original Contract.

On February 16, 2018, after receiving Wyndham's letter confirming cancellation of the Original Contract, Plaintiff sent Wyndham a letter exercising his statutory rights to rescind the Rewritten Contract. Wyndham honored Plaintiff's rescission request and processed the rescission on February 26, 2018. Wyndham sent Plaintiff a letter informing him of the rescission of the Rewritten Contract. Wyndham claims that based upon its standard business procedures, upon rescission of the Rewritten Contract, the Original Contract was reactivated and Plaintiff's payment was returned to that account, but Plaintiff argues that this process was "not used in this particular case," and that he was never notified that when he rescinded the Rewritten Contract, the Original Contract would be reactivated.

In April 2018, Plaintiff disputed with Citibank the $9,000.00 credit card charge for his down payment on the contract. In response, Citibank charged-back the $9,000.00 charge and refunded it to Plaintiff. Wyndham then considered Plaintiff to be in default on the Original Contract for failure to pay the requisite down payment, though Plaintiff disagrees, asserting instead that the Original Contract was rescinded.

In January 2020, in the ordinary course of furnishing information to the consumer

2

reporting agency to which it reports, Wyndham reported its cancellation of Plaintiff's Original Contract for non-payment and subsequent repossession of the vacation credits granted by the Original Contract. Plaintiff disputed his Wyndham tradeline with Equifax three times -- in January, May, and July 2020. (According to Investopedia, a tradeline is "a record of activity for any type of credit extended to a borrower and reported to a credit reporting agency." *See* https://www.investopedia.com/terms/t/trade-line.asp.) Wyndham timely responded to each of the Equifax disputes, each time verifying the information as reported on Plaintiff's consumer report. Around this same time, Plaintiff filed complaints regarding Wyndham's actions with various regulatory agencies in California and Florida.

Wyndham subsequently requested that the consumer reporting agencies to which it reported remove the negative marks from Plaintiff's credit history and returned to Plaintiff the underlying payments he made under his timeshare contract. Wyndham claims that it did this as a good faith gesture, but Plaintiff claims it was recognition by Wyndham that it had acted incorrectly.

Plaintiff filed this lawsuit on October 8, 2020. In the operative Second Amended Complaint [Doc #39], Plaintiff asserts a single claim against Wyndham for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), specifically § 1681s-2, based on Wyndham's alleged failure to conduct a reasonable investigation of Plaintiff's credit disputes, failure to review all relevant information provided by the credit reporting agency ("CRA") and failure to modify, delete or block reporting of inaccurate or unverifiable information.

## II.  THE MOTION

Wyndham requests summary judgment on Plaintiff's FCRA claim arguing: (1) Plaintiff's

3

dispute goes to the validity of his contract with Wyndham which is not a proper basis for a FCRA claim; alternatively, assuming Plaintiff's claim does constitute a proper basis for a FCRA claim, Wyndham properly investigated and responded to each dispute; (2) Plaintiff cannot recover economic damages under FCRA for removing himself from the credit market or for having been denied a checking account; and (3) Plaintiff cannot prove that Wyndham caused his alleged emotional distress damages.

### III.   STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if its determination might affect the outcome of the suit under the governing law. *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). Evidence and any reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017).

### IV.   ANALYSIS

Under FCRA § 1681s-2(b)(1), when a CRA, such as Equifax, notifies a furnisher of information, such as Wyndham, of a dispute, the furnisher is required to:

> (1) investigate the disputed information;
> (2) review all relevant information provided by the CRA;
> (3) report the results of the investigation to the CRA;
> (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and
> (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178-79 (10th Cir. 2013) (quoting *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x. 744, 750 (10th Cir. 2009) (unpublished)).

A consumer may recover actual damages caused by a defendant's negligent violation of FCRA. 15 U.S.C. § 1681o(a); *Llewellyn*, 711 F. 3d at 1179. However, under FCRA § 1681n(a), "the consumer need not prove actual damages if the violation is willful, but may recover punitive damages and statutory damages ranging from $100 to $1000." *Id*. In this case, Plaintiff seeks actual damages (both economic and for emotional distress) under § 1681o and statutory and punitive damages under § 1681n.

Because a claim under § 1681s-2 for negligence cannot proceed unless a plaintiff can establish that he has suffered actual damages that were caused by the defendant (even if the plaintiff has presented evidence that that the defendant engaged in conduct proscribed by the FCRA), I will proceed first with Wyndham's argument that Plaintiff has failed to provide evidence of actual damages as a result of any negligence by Wyndham.

### A. Whether Plaintiff Can Recover Actual Damages

Plaintiff seeks economic damages for lost credit opportunities and a denied checking account as well as damages for emotional distress under 15 U.S.C. § 1681o based on Wyndham's alleged negligent violation of the FCRA. Wyndham argues that even if Plaintiff has a legally cognizable FCRA claim, Wyndham is entitled to summary judgment because Plaintiff cannot show that he suffered an actual injury.

1. <u>Economic Damages</u>

5

Wyndham argues that Plaintiff cannot, as a matter of law, recover economic damages for his claimed lost credit opportunities because Plaintiff admits that he chose not to apply for credit during the relevant period and was never told by a lender that his application for credit would be denied or that he would not receive a mortgage on desirable terms. Mot. at 11, citing Remaly Dep. 90:5-7 (Plaintiff testifying that he did not apply for a mortgage anywhere because of what Wyndham had done). [Doc #64-1]

Plaintiff maintains that he chose not to seek credit for a good reason – he knew that with a major derogatory entry in his credit file, he would not get the best terms or even approval on a loan if he were to apply. Plaintiff adds that even Wyndham's expert, John Ulzheimer, agrees that "the better your credit, the better your loan," that "higher credit scores are better than lower scores" and that applying for credit can lower your credit score. Resp. at 22, citing Ulzheimer Dep. 27:6-28:6; 119:10-12. [Doc #78-29]

In *Llewellyn*, a case that involved a claim brought under FCRA §1861s-2 against, among others, entities (like Wyndham) that furnished information to CRAs, the court affirmed the district court's ruling that the plaintiff could not support his claim for economic damage because the plaintiff provided no admissible evidence that he had applied for and been denied credit. *Id.*, 711 F.3d at 1180, 1181 (also reversing the district court on its order granting summary judgment to defendants on Plaintiff's emotional distress damages). The Tenth Circuit held that without such evidence, it would not "infer that the . . . Defendants' negative credit reporting precluded Plaintiff from obtaining further loans as he contends," stressing that a plaintiff has the affirmative duty of coming forward with evidence supporting his claim that the defendant's alleged inaccurate report caused him harm. *Id*. at 1181. *See also Casella v. Equifax Credit Info.*

*Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (holding that in the absence of any evidence that the plaintiff – who admitted that he refrained from making any credit applications in order not to further tarnish his credit history – applied for credit during the relevant time period, lost opportunity damages were too speculative and plaintiff failed to meet his burden of demonstrating economic damages).

In support of his contention that he need not provide evidence that he applied for credit in order to support his claim for economic damages, Plaintiff cites two non-binding cases, the first being *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (decided before *Llewellyn* and *Casella*), in which the court held that a CRA's failure to comply with FCRA § 1681e(b) is actionable "even absent a denial of credit." *Id*. at 1333 (noting that "no case has held that a denial of credit is a prerequisite to recovery under the FCRA"). Plaintiff also relies on *Long v. Pendrick Capital Partners II, LLC,* 374 F. Supp.3d 515, 529 (D. Md. 2019) (citing *Guimond* and concluding that "a plaintiff may be compensated if she is merely deterred from accessing the credit market because of inaccuracies on her credit report"). At issue in *Guimond* was a reinvestigation claim against a CRA in which the plaintiff sought damages for emotional harm that she claimed was caused by inaccuracies in her credit report. To the extent that *Guimond* and *Long* are relevant to Plaintiff's claim for economic damages against Wyndham, they conflict with *Llewellyn*, a Tenth Circuit case to which I am bound.

Because there is no evidence that Plaintiff had applied for and been denied credit during the relevant period, I may not and will not infer that Wyndham's actions caused Plaintiff to suffer economic damage due to lost credit opportunities. I therefore conclude that Plaintiff has failed to meet his burden of presenting sufficient evidence to show that he suffered these

economic damages. *See Llewellyn*, 795 F. Supp.2d 1210, 1225–26 (D. Colo. 2011) ("Where a plaintiff fails to meet his burden of showing actual damages caused by an FCRA violation, summary judgment is appropriate"), *aff'd in part and rev'd in part on other grounds*, 711 F.3d 1173 (10th Cir. 2013) .

      Wyndham also argues that Plaintiff has failed to show that Citibank's denial of his application to open a checking account was related to Wyndham's tradeline on his credit report and contends that the denial of a checking account (which it argues is not a form of credit) cannot support a claim for damages under FCRA. Plaintiff responds that the denial letter from Citibank [Doc #78-30] (which does not name Wyndham or its tradeline and which states only that the application was denied "in whole or in part" based on information from the CRAs) indicates that Citibank denied the application based on Plaintiff's Equifax credit report and that since Wyndham's expert testified that Plaintiff's credit was otherwise clean, the reasonable inference is that Wyndham's tradeline on the Equifax report caused Citibank to deny Plaintiff a checking account.

      Even if I were to infer that Citibank based its decision on Wyndham's tradeline in the Equifax report, Plaintiff has made no allegations and points to no evidence that he suffered any measurable economic damages as a result of not being able to open a checking account at Citibank. As with the claimed lost opportunity damages, I conclude that Plaintiff has not met his burden of showing that Wyndham's actions caused him to suffer economic damages as a result of being denied a Citibank checking account. I therefore grant the economic damages portion of Wyndham's motion.

2. Emotional Distress Damages

Wyndham argues that Plaintiff has produced no evidence, aside from Plaintiff's own testimony, to support his claim for damages due to alleged emotional distress and loss of quality of life. Wyndham also argues that the testimony of Plaintiff's expert witnesses (Drs. Hannon and Smith) and Plaintiff's medical and psychiatric records contradict his claim that Wyndham caused his emotional distress or impacted his quality of life. According to Wyndham, both Dr. Leslie Hannon, Plaintiff's former psychologist, and Dr. Stan Smith, Plaintiff's economic damages expert, have testified that they do not intend to offer an expert opinion as to whether Plaintiff's alleged emotional distress was caused by Wyndham. Wyndham adds that Dr. Hannon's treatment notes reflect a number of other sources of emotional distress in Plaintiff's life from July 2019, when Dr. Hannon began treating Plaintiff, to April 2021, and that the first mention of Wyndham in Dr. Hannon's notes is on November 19, 2020, after this lawsuit was filed, after Wyndham agreed to cancel the Original Contract and remove it from Plaintiff's credit report and around the same time that Dr. Hannon was contacted by Plaintiff's counsel. Additionally, Wyndham points to Plaintiff's other medical records during the period 2018 to 2020 which also make no reference to anxiety or depression until November 3, 2020 (after this lawsuit was filed) at which time Plaintiff's medical provider, Apex Family Medicine, noted that "anxiety attacks started after an abusive relationship which has since ended." [Doc #68 at 5] Wyndham also notes that Plaintiff's application to immigrate to Australia states that Plaintiff was moving there to live with his partner, and not, as Plaintiff asserts, due to his distress over Wyndham's credit reporting. [Doc # 78-37]

Plaintiff is correct when he responds that in the Tenth Circuit, a FCRA plaintiff is not

9

required to produce corroborated testimony to establish emotional distress damages, so long as the plaintiff describes his or her emotional distress in sufficient detail and does not rely on conclusory statements. *See Llewellyn*, 711 F.3d at 1182. Plaintiff directs my attention to his declaration [Doc # 78-2] as support for his claim that he suffered significant emotional distress. Plaintiff states in his declaration that he was diagnosed with Irritable Bowel Syndrome ("IBS") twelve years ago and that his symptoms had been largely under control for the past five years. *Id*. ¶ 52. He further attests that stress is a major contributor to his IBS symptoms and that following the first report made by Wyndham to TransUnion reporting a repossession, he had to triple his use of Xanax to try to control his anxiety. *Id*. He adds that each time he received a letter stating that Wyndham found no error with its credit reporting, he experienced significant anxiety and had to take increased amounts of Xanax. *Id*. Despite his increased use of Xanax, Plaintiff states that he was still suffering significantly increased IBS symptoms including indigestion, heart burn, bloating, diarrhea and abdominal pain from the stress and that these symptoms continued for weeks after receiving each dispute response. *Id*. Plaintiff also states that the stress and anxiety of having incorrect information on his credit caused him to lose sleep (despite increasing his dosage of Ambien), caused the quality of his work to suffer and caused him embarrassment and shame. *Id*. ¶¶ 53, 54. In addition, Plaintiff states that he "sought psychological therapy to help manage my stress and anxiety resulting from Wyndham's negative report" and that he began having frequent and debilitating anxiety attacks whenever he started to worry about his credit. *Id*. ¶ 56. Plaintiff also emphasizes that around this time he even applied for a visa to immigrate to Australia where the negative credit reporting would not affect him. *Id*. ¶ 44.

      I note that Plaintiff's medical records (attached as Exhibits S and T to the Motion [Doc

##67, 68]) confirm that Plaintiff had prescriptions for Xanax and Ambien and that he saw a psychologist, Dr. Hannon, from July 2019 to around January 2020. I also confirm that there is no mention of Wyndham in Dr. Hannon's notes until November 19, 2020 (at which point Dr. Hannon notes that Plaintiff "talked at length about having panic attacks recently and tied it to a time share venture through Wyndham that impacted his credit. He also said he was thinking about antidepressant medication as he has been taking Xanax" and that "he might be able to travel to Australia if his visa goes through") or in the Apex Family Medicine records until November 3, 2020, as referenced above. [Doc #67 at 13; Doc #68 at 5]

Viewing the evidence of Plaintiff's emotional distress in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, I conclude Plaintiff, in his declaration, described his emotional distress (including the intensity and recurrence and timing of his symptoms and his attempts to treat them) in sufficient detail to create a disputed issue of material fact that Wyndham's actions caused him to suffer emotional damages. That Plaintiff was experiencing other stressful life events during the same time period, does not make the inference that at least some of Plaintiff's distress was caused by Wyndham any less reasonable. *See Llewellyn*, 711 F.3d at 1183. Therefore, I deny this portion of Wyndham's motion.

### B.  Whether Plaintiff's Claim is a Proper Basis for a FCRA Claim

Having concluded that Plaintiff's claim for emotional distress damages survives this motion, I will now consider Wyndham's argument that Plaintiff's FCRA claim is really just a contractual dispute over the ongoing validity of the Original Contract, a dispute that Wyndham argues is not a proper basis for a claim under FCRA. Wyndham argues that, as a matter of law, Plaintiff does not have a private cause of action against Wyndham because Wyndham may only

be held liable for failing to conduct a reasonable investigation and not for failing to ensure that the debts it reports would survive all legal challenges.

Plaintiff counters that his claim against Wyndham is not a legal claim over the validity of the Original Contract, but rather is a claim that Wyndham, as the furnisher of information to the CRAs, failed to properly investigate his credit dispute and failed to report back to the CRA accurate information about the status of his contract. Plaintiff maintains that if Wyndham had properly investigated, it would have determined, as it finally did in July 2020, that the Original Contract should have been logged as "Rescinded" instead of "Cancel/Repo."

I agree with Plaintiff that this case is not a dispute over the validity of the underlying contract. While the contractual dispute may be a part of the background of the FCRA dispute, Plaintiff's claim is ultimately about whether Wyndham reasonably investigated the underlying facts regarding Plaintiff's alleged debt when it reported the debt and repossession to the CRAs. I will therefore move on to Wyndham's alternative argument that its investigation was reasonable as a matter of law.

As noted above, the parties do not dispute that Plaintiff, in addition to sending a written dispute directly to Wyndham, also disputed the negative credit reporting with Equifax three times – in January, May and July 2020 – to which Wyndham responded each time verifying the information as reported on Plaintiff's credit report. In the first Automated Consumer Dispute Verification form ("ACDV"), created by Equifax on January 23, 2020, to which Wyndham responded on January 30, 2020, in the "FCRA Relevant Information" box, it was noted that "[t]his account was mutually rescinded and closed by myself and Worldmark on February 14, 2018 because the contract was determined by both parties to be deficient. All funds on this

12

account were to be refunded to me as evidenced by their letter." [Doc #78-20] The ACDV indicates that no images were sent. *Id.*

The second ACDV [Doc #78-22], created by Equifax on April 29, 2020, to which Wyndham responded on May 5, 2020, indicates that "Consumer states inaccuracy on item" and that there were images sent, which Plaintiff identifies as "both contracts, both letters stating the contracts were rescinded, and his correspondence with Carol Kay stating the contract was 'cancelled' and 'closed.'" Resp. at 7, ¶¶ 38, 39.

The third ACDV [Doc #78-28], created by Equifax on July 14, 2020, to which Wyndham responded on July 21, 2020, indicates that images were attached, which Plaintiff identifies as including his July 7, 2020 letter to Equifax disputing the credit reporting to which was attached the letters from Worldmark dated February 14 and February 27, 2018 noting rescissions and refunds of the two contracts. Resp. at 8, ¶ 46; Remaly Dec. [Doc #78-2] ¶ 43. (Neither Plaintiff's copies of the second and third ACDVs [Doc ##78-22, 78-28], nor Wyndham's copies of the same [Doc ## 64-15, 64-16] include the referenced images.)

Wyndham argues that its credit reporting was reasonable and consistent with its internal system of records of Plaintiff's account. Wyndham explains that Levelyn Barber, the Wyndham employee primarily responsible for investigating and responding to ACDVs (and the person who responded to Plaintiff's ACDVs) testified that as her regular business practice she follows Wyndham's policies and procedures each time she responds to an ACDV. Those policies and procedures, described by Wyndham, "require that the information in the automated consumer dispute verification ("ACDV") received from the credit bureaus matches the relevant fields in Wyndham's internal system of record, called Mainframe, or in the Blackbird system that is used

13

to backup Mainframe." Mot. at 9. In addition, citing the deposition testimony of its expert, John Ulzheimer, Wyndham argues that its procedures for responding to ACDVs are consistent with industry standards. Wyndham concludes that because its credit reporting and ACDV responses were at all times consistent with its internal system of record, Plaintiff cannot show that Wyndham violated FCRA because § 1681s-2 only requires that a furnisher refrain from furnishing information it has "reasonable cause to believe . . . is inaccurate." Mot. at 10. Wyndham argues that because it "had reason to believe, based on its internal records and following multiple internal investigations, that the Original Contract was enforceable," it is entitled to summary judgment.

Plaintiff maintains that Ms. Barber, who testified that she was the only person at Wyndham responsible for responding to credit disputes received by Wyndham from TransUnion and Equifax, did not look for the letter referenced in the first ACDV (Wyndham neither affirms or denies this point), and it appears from Ms. Barber's deposition testimony that she would not have looked for or even had access to the referenced letter. *See* Barber Dep. 11:9-18:24; 81:10-82:25. [Doc #78-15] Though Plaintiff asserts that Ms. Barber failed to look for any of the documentation included or referenced in the second ACDV (citing her deposition testimony) and Wyndham's interrogatory responses, the cited discovery is not that clear. Barber Dep. 81:10-82:25); [Doc #78-20 at 2-3]. However, Wyndham does not assert that Ms. Barber looked at any other documentation beyond the records in Mainframe.

Plaintiff argues that Wyndham failed to conduct a reasonable investigation, noting that Wyndham recognized, albeit too late, that its records in Mainframe were wrong, and citing Wyndham's own acknowledgement of the need for a correction that occurred in June and July

14

2020. Plaintiff highlights a Wyndham internal email from July 20, 2020, the day before Wyndham responded to the third ACDV that its credit reporting was accurate, in which Wyndham internally determined that the coding of the Original Contract should be updated to show "Rescinded" instead of "Cancel/Repo." *See* Resp. Ex. 25 [Doc #78-26]; Ex. 24 [Doc #78-25] (June 12, 2020 Wyndham internal email chain discussing decision to rescind and refund Plaintiff's contracts, noting that Plaintiff "did receive rescission letter stating both 2017 and 2018 contract was rescinded"). The July 20, 2020 email states, in part: "This [the Original Contract] is a contract that was rewritten. Owner rescinded the rewrite so this contract was reinstated. This was before we did Funds Transfer Agreements on Worldmark, so Legal has determined that since we didn't give the owner anything in writing saying that if they rescinded the rewrite we would reinstate the original contract, we should update the original contract to show as Rescinded instead of Cancel/Repo" and give a full refund. [Doc #78-26]

Plaintiff notes that Ms. Barber testified that if she had access to the June 12 and July 20, 2020 internal records showing that Wyndham's consumer affairs office had requested the Original Contract be re-coded as rescinded, she would have responded differently to the third credit dispute, but since she only had access to Mainframe, she could not have seen those records at the time she responded to the third ACDV. Resp. at 19; Barber Dep. [Doc #78-15] 132:2-135:1.

Plaintiff concludes that even if Wyndham's credit reporting was consistent with Mainframe and industry standards, that does not mean that Wyndham's investigation was reasonable beyond question. Plaintiff argues that each time he disputed his credit reporting, Wyndham conducted only a cursory review of its system of record and that it should have

15

reviewed its own internal records, including its correspondence with Plaintiff, or consulted with someone who could have provided Ms. Barber with supporting documentation, which would have shown that the contracts had been rescinded.

A furnisher's § 1681-s2(b) investigation must be "reasonable," that is, "one that a reasonably prudent person would undertake under the circumstances." *Maiteki v. Marten Transport Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) and *Seamans v. Temple Univ*., 744 F.3d 853, 864 (3d Cir. 2014)). "How thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Maiteki* at 1275 (quoting *Boggio* at 617 and citing *Chiang v. Verizon New England Inc*., 595 F.3d 26, 38 (1st Cir. 2010) ("[A] more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute."). A plaintiff bears the burden of showing that the furnisher's investigation was unreasonable. *Maiteki*, 828 F.3d at 1275.

Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper when "the reasonableness of the defendant's procedures is beyond question." *Id*. (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)). Courts look to the procedures employed by the furnisher rather than the results of the investigation. *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp.2d 997, 1011 (D. Colo. 2012). Additionally, courts focus on the wording of the notice of dispute as received by the furnisher from the CRA. *Id*.

"FCRA's requirement that furnishers of information correct 'incomplete or inaccurate' information, 15 U.S.C. § 1681s-2(b)(1)(D), extends not only to false information, which 'is

16

clearly inaccurate,' but to information provided 'in such a matter as to create a materially misleading impression' as well." *Llewellyn*, 711 F.3d at 1186 (quoting *Boggio*, 696 F.3d at 617). In *Llewellyn*, the furnisher defendants (who should have, but did not receive a payoff when their borrower, the plaintiff, refinanced) argued that no FCRA violation occurred because their reporting of the plaintiff's nonpayment of the loan was accurate. *Id*. at 1185. However, the court refused to let the defendants off the hook, concluding instead that a furnisher violates § 1681s-2 not just by failing to correct incomplete or inaccurate information, but also by providing information in such a manner as to create a materially misleading impression. *Id*. at 1186. The court concluded that summary judgment for the defendants was improper because the defendants failed to provide any argument on whether their reporting of the plaintiff's nonpayment of the loan "without any mention of Plaintiff's dispute created a materially misleading impression." *Id*. (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008) (affirming denial of defendant's motion for judgment as a matter of law because a "jury could reasonably conclude that [the defendant's] decision to report the debt without any mention of a dispute was misleading in such a way and to such an extent that it can be expected to have an adverse effect")).

      I do not find that the reasonableness of Wyndham's investigation is beyond question. A jury could reasonably conclude, for example, that under the circumstances, and to avoid providing incomplete or incorrect information or creating a materially misleading impression, Wyndham should have done more than simply checking the status of Plaintiff's account in Mainframe and that it should have been more thorough by reviewing its own internal correspondence and/or its correspondence with Plaintiff or consulting with someone at the

17

company who could have provided the supporting documentation. The evidence, including evidence that Wyndham had notice about the nature of the dispute and that it limited its investigation to the Mainframe to the exclusion of relevant documents in its possession, is not so one-sided as to mandate a finding that Wyndham's investigation was reasonable as a matter of law. Plaintiff has presented sufficient evidence to create a genuine dispute as to whether Wyndham conducted a reasonable investigation and for this reason, I am denying this portion of Wyndham's motion.

### C. Plaintiff's Claim for Statutory Damages

As Plaintiff points out, Wyndham's Motion did not include any discussion or argument as to whether Plaintiff is entitled to statutory or punitive damages for Wyndham's alleged intentional violation of FCRA. Indeed, Wyndham addressed only Plaintiff's claim for actual economic and emotional distress damages based on Wyndham's alleged negligent violation of FCRA. Mot. at 11-14. It is not until the Reply brief that Wyndham raises, for the first time, the argument that Plaintiff cannot meet the standard for statutory and punitive damages. *See* Reply at 8-9. "[A] party waives issues and arguments raised for the first time in a reply." *Colorado Rail Passenger Ass'n v. Fed. Transit Admin.*, 843 F. Supp.2d 1150, 1171 (D. Colo. 2011) (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)). I therefore conclude that this argument is waived and I will not consider it at this time.

## V. CONCLUSION

For the reasons stated above, it is HEREBY ORDERED that Wyndham's Motion for Summary Judgment [Doc #62] is GRANTED IN PART AND DENIED IN PART as follows:

1) the motion is GRANTED on the issue of Plaintiff's economic damages;

2) the motion is DENIED on the issue of Plaintiff's emotional distress damages; and

3) the motion is DENIED on the issue whether Wyndham conducted a reasonable investigation.

DATED:    November 23, 2021 in Denver, Colorado.


BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE